## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT WILLIAMS, JR.<br>8710 Cowart Street<br>Houston, TX 77029 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No.: 3:23-cv-207_____ |
| v. | : <br> : <br> : | |
| BLOCK AND TACKLE, LLC<br>3121 Pleasant Valley Boulevard<br>Altoona, PA 16602<br>and<br>AUSTIN TATAREK<br>c/o Block and Tackle, LLC<br>3121 Pleasant Valley Boulevard<br>Altoona, PA 16602 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : <br> : | |

## CIVIL ACTION COMPLAINT

Robert Williams, Jr. (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Block and Tackle, LLC and Austin Tatarek (*hereinafter* collectively referred to as "Defendants," unless indicated otherwise) for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 200d *et seq.*), 42 U.S.C. Section 1981, the Pennsylvania Human Relations Act ("PHRA"), the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201 *et seq.*), and the Pennsylvania Minimum Wage

1

Act ("PMWA").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.　　This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact as his federal claims.

3.　　This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.　　Pursuant to 28 U.S.C. § 1392(b)(2), venue is properly laid in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

5.　　Plaintiff is proceeding herein (in part) under Title VII after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under Title VII. Plaintiff's PHRA claims however will mirror identically his federal claims under Title VII. Additionally, his PHRA claims will contain aiding and abetting with respect to the individual Defendant.

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant Block and Tackle, LLC (*hereinafter* "Defendant Entity") is a Delivery Service Partner ("DSP") that contracts delivery services with Amazon throughout Pennsylvania. Defendant Entity has headquarters at the above-captioned address.

9.      Austin Tatarek (*hereinafter* "Defendant AT") is the Owner and Director of Operations of Defendant Entity (a high-level manager) and decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant Entity including but not limited to hiring, firing, and issuing discipline.

10.     At all times relevant herein, Defendant Entity acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant Entity.

**FACTUAL BACKGROUND**

11.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.     On or about March 23, 2023, Defendant Entity hired Plaintiff as a Dispatcher.

13.     During his tenure with Defendant Entity, Plaintiff was a dedicated and hard-working employee who performed his job well.

14.     At all times relevant herein, Plaintiff was directly supervised by Defendant AT and Dispatch Supervisor, Shante Johnson (*hereinafter* "Johnson"), and indirectly supervised by Owner, Joe Tatarek (*hereinafter* "Tatarek").

**Racial Discrimination, Retaliation, and Hostile Work Environment**

15.     Plaintiff is a black (African-American) male.

16.     At the time of Plaintiff's employ with Defendant Entity, Defendant Entity primarily employed non-black individuals.

17.     Upon information and belief, throughout Plaintiff's tenure with Defendant Entity, Defendant Entity subjected black employees (including Plaintiff) to a disparate and hostile work environment.

18.     More specifically, Defendants' Caucasian and/or non-black management and employees clearly favored Caucasian employees and subjected Plaintiff to derogatory comments based on this race. By way of example, but not intended to be an exhaustive list:

   a.     Defendant Entity's Caucasian management and coworkers treated Plaintiff and other black employees in a rude and demeaning manner (unlike Caucasian employees); and

   b.     Several co-workers routinely referred to Plaintiff as a "Philly nigger."

19.     To expand further, in or about the week of April 3, 2023, Dustin Beckwith (*hereinafter* "Beckwith" – Caucasian) called Plaintiff a "Philly nigger."

20.     In response to Beckwith's disgusting racial epithet, Plaintiff immediately reported the same to Johnson, to which Johnson assured Plaintiff that she would relay Plaintiff's complaint to Defendant AT.

21.     As Plaintiff was appalled by Beckwith's flagrant use of the word "nigger," Plaintiff also reported Beckwith's comment directly to Defendant AT.

22.    During said conversation with Defendant AT (discussed *supra*), Plaintiff reiterated the aforesaid derogatory comment that was made by Beckwith and also specified that he felt Defendant Entity's management and staff were discriminating against him because of his race.

23.    Defendant AT assured Plaintiff that he would speak directly with Beckwith and address his aforesaid complaint of racial discrimination.

24.    Upon information and belief, Defendant AT did nothing to properly investigate or resolve Plaintiff's aforesaid complaints of racial discrimination.

25.    In fact, just two (2) days following Plaintiff's complaint (discussed ¶¶ 20-23), Defendant AT informed Plaintiff that they "need to talk."

26.    In compliance with Defendant AT's directive, Plaintiff immediately called Defendant AT, believing that the same would be a conversation to address his aforesaid complaints of racial discrimination.

27.    Instead, Defendant AT accused Plaintiff of making an employee "feel bad" and threatened to terminate Plaintiff's employment if it occurred again.

28.    Significantly, Defendant AT's accusation was completely fabricated, as Plaintiff was simply performing his job duties during the incident in question.

29.    As further evidence of Defendants' racial discriminatory and retaliatory animus, at least one (1) other black female employee, Octavia (last name unknown – *hereinafter* "Octavia") made reports regarding Defendant Entity's hostile work environment after Driver/Dispatcher, Rosa Shuey (*hereinafter* "Shuey" – Caucasian), whom Plaintiff also regularly worked with, called Octavia a "hood nigger" and "black nigger."

30.    In or about early/mid-April of 2023, shortly after Shuey made such racially hostile comments towards Octavia (discussed ¶ 29), Plaintiff reported the same to Johnson.

31.     Rather than terminate Shuey for subjecting Octavia to the same (discussed *supra*), Defendant Entity terminated Octavia's employment in retaliation for reporting the aforesaid instances of race discrimination.

32.     Subsequent thereto, on or about April 21, 2023, Plaintiff overheard Beckwith speaking with Driver, Tim Wance (*hereinafter* "Wance" – Caucasian), wherein Wance stated, "we are going to get the nigger out of here," clearly referring to Plaintiff and his employment with Defendant Entity.

33.     On said date, Plaintiff placed a call to Defendant AT to report Wance's racial slur and threat (discussed *supra*).

34.     Thereafter, on or about April 24, 2023, Shuey also referred to Plaintiff as a "Philly nigger." Plaintiff immediately objected to Shuey's derogatory comment, however, she replied "you guys call yourself 'nigger' all the time."

35.     On or about April 24, 2023, as a result of Defendant Entity's continued racial discriminatory and hostile work environment, Plaintiff made yet another complaint regarding the same to Defendant AT. Defendant AT again failed to perform any meaningful investigation into Plaintiff's complaint of discrimination.

36.     Instead, on or about April 29, 2023, just five (5) days following Plaintiff's last report of racial discrimination (discussed *supra*), Defendant AT and Tatarek called Plaintiff wherein Defendant AT abruptly terminated Plaintiff's employment alleging "work wise [he was] doing well," but that he was not a "good fit."

37.     Notably, Defendants retained the aforesaid Caucasian employees, including Beckwith, Shuey, and Wance, who subjected Plaintiff to blatant racial discrimination and harassment.

38.    Following his termination, on or about April 29, 2023, Beckwith text messaged Plaintiff, "This is Dustin [Beckwith] glad your nigger ass got fired me, Austin, Tim and Rosa we planned it now how you like me now, we all hated you from the beginning nigger ass bitch go back to Philly where you belong." *See* Text Message, attached hereto as "Exhibit A."

39.    Defendants' reason for Plaintiff's termination is completely discriminatory and/or pretextual because: (1) Plaintiff utilized the proper channels to make his aforesaid complaints of a race discrimination; (2) Defendants failed to meaningfully address or investigate Plaintiff's numerous aforesaid complaints of racial discrimination (discussed *supra*); (3) Defendants terminated Plaintiff just five (5) days following his last complaint of race discrimination (discussed *supra*); (4) Defendants retained the aforesaid Caucasian employees, including Beckwith, Shuey, and Wance, who subjected Plaintiff to blatant racial discrimination and harassment; (5) Beckwith admitted to Plaintiff that Defendant Entity's employees and management (including Defendant AT) hated him because of his race on the ***same day*** he was terminated; and (6) Defendants also terminated another black employee, Octavia, shortly after subjecting her to similar racial harassment and retaliation following her report of race discrimination regarding Shuey.

40.    Plaintiff believes and therefore avers that Defendants terminated his employment in violation of Title VII and Section 1981.

## Defendant Entity's Failure to Pay Plaintiff's Overtime

41.    Upon information and belief, while employed by Defendant Entity, Plaintiff earned approximately $20.00 per hour and worked approximately forty-six (46) to forty-eight (48) hours per week.

42.    Throughout Plaintiff's tenure with Defendant Entity, Defendant Entity solely paid Plaintiff $20.00 per hour regardless of whether Plaintiff worked over forty (40) hours per week.

43.     Accordingly, Defendants failed to pay Plaintiff overtime throughout his tenure with Defendant Entity.

44.     At all times relevant herein, Plaintiff was unequivocally a non-exempt employee who should have been paid overtime for all hours worked over forty (40) hours at a rate of time and one half.[2]

45.     Plaintiff believes and therefore avers that Defendants failed to properly pay Plaintiff overtime, in violation of the FLSA and PMWA.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race/Color Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**
**-Against Defendant Entity-**

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.     During Plaintiff's employment with Defendant Entity, he was subjected to a hostile work environment based on his race/color and/or in retaliation for complaining of racial discrimination through disparate/derogatory treatment and discriminatory comments.

48.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by non-black employees and Defendant Entity's management (including Defendant AT); however, his concerns were ignored, and instead, Plaintiff was subjected to retaliation and terminated just five (5) days after his aforesaid last complaint of racial discrimination and a hostile work environment.

---

[2] *See also Marshall v. National Freight, Inc.*, 1979 U.S. Dist. LEXIS 9989 (D.N.J. 1979) (dispatcher cannot meet executive exemption and held not to meet administrative exemption); *Sehie v. City of Aurora*, 432 F.3d 749 (7th Cir. 2005) (summary judgment for dispatcher as to FLSA claims); *Iaria v. Metro Fuel Oil Corp.*, 2009 U.S. Dist. LEXIS 6844 (E.D. N.Y. 2009); *Alvarez v. Key Transp. Transp. Svc. Corp.*, 541 F. Supp. 2d 1308 (S.D. Fla. 2008); *Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005) (dispatcher not exempt from overtime requirements).

49.    Plaintiff believes and therefore avers that his race was a motivating and/or determinative factor in Defendant Entity's decision to terminate his employment.

50.    Plaintiff also believes and therefore avers that he was terminated in retaliation for complaining of racial discrimination and a racially hostile work environment.

51.    These actions as aforesaid constitute violations of Title VII.

**COUNT II**
**Violation of 42 U.S.C. Section 1981**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**
**-Against All Defendants-**

52.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.    During Plaintiff's employment with Defendant Entity, he was subjected to a hostile work environment based on his race and/or in retaliation for complaining of racial discrimination through disparate/derogatory treatment and discriminatory comments.

54.    Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by non-black employees and Defendant Entity's management (including Defendant AT); however, his concerns were ignored, and instead, Plaintiff was subjected to retaliation and terminated just five (5) days after his aforesaid last complaints of racial discrimination and a hostile work environment.

55.    Defendant AT was deliberately indifferent to and/or directly participated in Defendant Entity's employees' racially-motivated conduct in that they: (1) retained the aforesaid Caucasian employees that subjected him and other similarly situated black employees to a hostile work environment and discrimination; (2) ignored Plaintiff's aforesaid complaints of discrimination; and (3) instead, terminated his employment just five (5) days after his last aforesaid complaint of racial discrimination and a hostile work environment.

9

56.     Plaintiff believes and therefore avers that his race was the but for reason in Defendant Entity's decision to terminate her employment.

57.     Plaintiff also believes and therefore avers that he was terminated in retaliation for complaining of racial discrimination.

58.     These actions as aforesaid constitute violations of 42 U.S.C. § 1981.

**Count III**
**Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime Compensation)**
**- Against All Defendants –**

59.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60.     At all times relevant herein, Defendant Entity has and continues to be an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA"). Defendant Entity is also an enterprise as defined by the FLSA.

61.     At all times relevant herein, Defendants were responsible for paying wages to non-exempt employees, such as Plaintiff.

62.     At all times relevant herein, Plaintiff was employed with Defendant Entity as an "employee" within the meaning of the FLSA.

63.     Under the FLSA, an employer must pay a non-exempt, employee, such as Plaintiff at least one-and one-half times his or her hourly rate for each hour worked in excess of forty hours per week.

64.     Plaintiff was at all times a non-exempt employee while employed with Defendants; however, he was never paid overtime compensation throughout his tenure with Defendants.

65.     Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

10

66.    It is abundantly clear that Defendants have instituted an illegal payroll scheme in order to avoid paying proper overtime wages for all hours worked beyond 40 in one week.

67.    As a result of Defendants' failure to pay Plaintiff the overtime compensation due him, Defendants have violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

68.    Upon information and belief, Defendant AT was personally aware of their overtime obligations, paid employees (including Plaintiff) intentionally in violation of overtime obligations, perpetuated an unlawful payroll system, and exercised control overtime compensation, scheduling and payroll of employees daily and weekly to control and prevent such violations.

69.    These actions as aforesaid constitute violations of the FLSA.

**Count IV**
**Violations of the Pennsylvania Minimum Wage Act ("PMWA")**
**(Failure to Pay Overtime Compensation)**
**- Against All Defendants -**

70.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

71.    At all times relevant herein, Defendant Entity is, and continues to be, an "employer" within the meaning of the PMWA.

72.    Throughout his tenure with Defendant Entity, Plaintiff was employed by Defendant Entity as an "employee" within the meaning of the PMWA.

73.    The PMWA requires covered employers, such as Defendant Entity, to minimally compensate its "non-exempt" employees, such as Plaintiff, 1.5 times the employee's regular rate of pay for each hour that the employee works over 40 in a workweek.

74.    At all times during his employment with Defendant Entity, Plaintiff was a "non-exempt" employee within the meaning of the PMWA.

75.    Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the PMWA.

76.    Defendants failed to pay Plaintiff time and one half for all hours that he worked over 40 each workweek.

77.    It is abundantly clear that Defendants have instituted an illegal payroll scheme in order to avoid paying proper overtime wages for all hours worked beyond 40 in one week.

78.    As a result of Defendants' failure to pay Plaintiff the overtime compensation due him, Defendants have violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

79.    Upon information and belief, Defendant AT was personally aware of their overtime obligations, paid employees (including Plaintiff) intentionally in violation of overtime obligations, perpetuated an unlawful payroll system, and exercised control overtime compensation, scheduling and payroll of employees daily and weekly to control and prevent such violations.

80.    These actions as aforesaid constitute violations of the PMWA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.    Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.


                                          Respectfully submitted,

                                          **KARPF, KARPF & CERUTTI, P.C.**


                              By:         _____
                                          Ari R. Karpf, Esq.
                                          3331 Street Rd.
                                          Two Greenwood Square, Suite 128
                                          Bensalem, PA 19020
                                          (215) 639-0801

Dated:  September 5, 2023